1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELVA RODRIGUEZ,                              No. 09-00731 CW

       Plaintiff,                        ORDER GRANTING
                                             DEFENDANT'S
  v.                                         MOTION FOR
                                             SUMMARY JUDGMENT
JOHN MUIR MEDICAL CENTER,

       Defendant.
_____/

    Plaintiff Elva Rodriguez brings claims of unlawful
discrimination, harassment and retaliation against Defendant John
Muir Medical Center.  Defendant moves for summary judgment on all
of Plaintiff's claims.  Plaintiff opposes the motion.  The motion
was heard on August 5, 2010.  Having considered oral argument and
the papers submitted by the parties, the Court grants Defendant's
motion for summary judgment.

BACKGROUND

    Plaintiff is a Hispanic female.  She has worked for Defendant
since February, 1989.  From 1989 to 2000, she worked as an
environmental technician.  While in this position, she took
multiple leaves of absence for work-related injuries to her back
and neck.  In 2000, Rodriguez became a unit secretary in the
postpartum division after returning from a leave of absence due to

United States District Court
For the Northern District of California

a back injury.  As a unit secretary, Plaintiff received an increase in salary and was in a position in which she would not have to perform work that would aggravate her back or neck injuries.  Her orthopaedic doctor, Francis Pecoraro, stated that her work restrictions were "no lifting more than 20 lbs and no repetitive flexion and extension of the lumbar spine."  Rodriguez Decl., Ex. 8.  As unit secretary, her clinical coordinator and daily supervisor was Laurie Sibbitt, her manager was Marina Yardumian and her director was Meredith Pence.

Plaintiff generally claims that she "was constantly and continuously harassed by a clique of nurses led by Rachelle Menconi-Shipp from early 2003 to March, 2008."  Rodriguez Decl. ¶ 3.  The clique was made up of Menconi-Shipp, Jennifer Briggs, Kristin Bower, Natalie Dicks, Janie Cockman and Shantelle McNabb. Sibbitt Dep. at 9:16-19.  She states that each time this clique of nurses worked together, which was three times a week, the nurses would "draw up chairs around [her] workstation and talk about sexual experiences, length of penises, racial remarks, and the like."  Rodriguez Decl. ¶ 8.  Sibbitt confirmed in general that she observed the clique of nurses "make racial remarks about Hispanic people."  Sibbitt Dep. at 18:17-18.  However, Sibbitt does not state when or how often these comments were made.  Sibbitt did not notify her superiors about these comments.

Plaintiff's case is based on only two specific incidents of national origin harassment.  The first occurred at some point in 2003.  She claims that, when she told Menconi-Shipp that she was moving to Discovery Bay, Menconi-Shipp asked her how she could

2

afford to live there and if she received extra money from drug dealing, "like the other Mexicans, drug dealers." Rodriguez Dep. at 87:21-24.

On November 10, 2003, Sibbitt and Yardumian placed Plaintiff on a forty-five day performance probation because of her behavior and performance at work. The memo describing the reasons for the probation noted, for example, her verbalized anger towards Sibbitt and "another coworker," long periods away from her desk without informing the charge nurse, many non-work-related telephone calls, crying at her desk, refusal to go home when asked, telephone calls to many staff members' houses, misuse of prescription drugs, erratic behavior and an inability to concentrate and complete tasks. Rodriguez Dep., Ex. 8.

On November 24, 2003, Plaintiff saw Dr. Pecoraro and complained of "whole body pain and more specifically, increase in lower back pain." Id. Dr. Pecoraro described his visit with Plaintiff in a letter addressed to TriStar Insurance, stating, "As you aware [sic], [Ms. Rodriguez] is having a great deal of stress in her life because of work-related issues. To refresh your memory, Ms. Rodriguez was accused of abusing her Vicodin. She was accused of being oversedated at work and this came as quite a surprise to Ms. Rodriguez, as well as myself." Id. Dr. Pecoraro wrote that Plaintiff was not abusing her prescription medication, and noted, "It is apparent at this time that although Ms. Rodriguez should continue her employment with John Muir Medical Center, she cannot continue to work in the department that she currently does . . . . She should be transferred to another department which, in

3

my estimation, should be easy enough to do." <u>Id.</u>  Dr. Pecoraro
also noted that Plaintiff "has been seen by Dr. Rome, a well-
respected pain-trained psychologist.  He feels strongly that Ms.
Rodriguez should be transferred to another department as this would
serve Ms. Rodriguez's best interest, as well as the interest of her
current department." <u>Id.</u>  Dr. Pecoraro recommended that Plaintiff
stop working if not transferred because "her current situation is
intolerable." <u>Id.</u>

     As noted above, this letter was addressed to TriStar
Insurance, not Defendant.  Plaintiff has presented no evidence that
she or TriStar or anyone else provided the letter to Defendant.

     After her evaluation by Dr. Pecoraro, Plaintiff went on
medical leave due to "mental stress." Rodriguez Dep. at 180:7-8.
While on leave, Plaintiff requested a transfer to another
department because of the stress deriving from interactions with
co-workers in her department.  Kroll Decl. ¶ 5.  Director of
Employee Health Barbara Kroll advised Plaintiff that she would need
a written verification from her treating physician to transfer her
to a different department.  Kroll Decl. ¶ 5.  On January 22, 2004,
Plaintiff's treating psychologist Dr. Rome wrote a letter to
Defendant which stated, "Ms. Rodriguez is released to return to her
usual and customary job with no restrictions from a psychological
standpoint."  Upon her return from leave, Plaintiff handed this
letter to Yardumian.  Plaintiff presents this short letter as the
sole evidence that she provided to Defendant concerning a doctor's
verification requesting a transfer to a different department.
However, nothing in this letter recommends such a transfer and

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Defendant claims that it did not receive any information from a physician recommending a transfer.  Thus, Defendant returned Plaintiff to her former position as a unit secretary in the postpartum department.

The other specific incident of national origin harassment of which Plaintiff complains occurred at some point in 2004 or 2005, when Menconi-Shipp made a derogatory remark about a Hispanic young man who had died in the hospital.  Menconi-Shipp said that "he was Hispanic and worthless anyway."  Rodriguez Dep. at 77:14-23; id., Ex. 6. Plaintiff complained to Sibbitt about this comment, presumably in 2004 or 2005.  There is no evidence that Sibbitt did, or did not, do anything in response to this complaint.

Plaintiff claims that, at some point in 2005, she verbally complained to Sibbitt about the inappropriately sexual nature of the clique of nurses' conversations.  Rodriguez Dep. at 74:20. Sibbitt responded by telling the nurses to stop these discussions. Sibbitt Dep. at 14:11-15.  Sibbitt told Yardumian about Plaintiff's complaint; Yardumian did not take any additional action.  Id. at 14:4-19.  Although not clear from the record, it appears that Plaintiff complained directly to the nurses about these conversations, but not until the end of 2007.  Rodriguez Dep. at 73:10-12.  At that time, Plaintiff told them, "You guys are getting out of hand."  Id.

In September, 2006, Menconi-Shipp replaced Laurie Sibbitt as Plaintiff's immediate supervisor.  Sibbitt transferred to a different division because she disagreed with the way her supervisors, Yardumian and Pence, dealt with the clique of nurses.

5

United States District Court
For the Northern District of California

Sibbitt claims that Yardumian and Pence did not help her "supervise" the clique or "correct the problems" she was having with the clique.  Sibbitt Dep. 9:10-13.  Before Menconi-Shipp was promoted, Plaintiff wrote Yardumian a letter expressing her concerns about Menconi-Shipp's qualifications.  Plaintiff wrote that Menconi-Shipp was the leader of a clique of nurses and that she was "involved in every negative situation or problem amongst the PM staff, even when it doesn't concern her."  Rodriguez Dep., Ex. 13.  She complained that Menconi-Shipp assigned her friends at work the lightest assignments and overloaded other nurses with more difficult patients.  Id.  The letter mentions no instances of harassment or discrimination, based on national origin or anything else.

Plaintiff presents no evidence of any harassment or complaints about harassment between September, 2006 and March, 2008.  On March 5, 2008, Menconi-Shipp and Yardumian met with Plaintiff to discuss a complaint made by another nurse, Natalie Dicks.  Dicks complained that Plaintiff called her a "bitch."  Rodriguez Dep. at 80:23-82:11.  Plaintiff denied making the comment and complained that other nurses used profane language regularly.  Plaintiff also complained that the nurses routinely talked about sex in front of her desk and used racial slurs to describe South Asians. Specifically, she claimed that nurses at work called South Asians "guptas" and "habibs" and joked about their body odor.  It is not clear who made these comments, and when or how often they were made.  Plaintiff does not deny that she also participated in making such slurs.  Dicks Dep. at 35:18-36:8; Menconi-Shipp Dep. at 19:1-

6.

On March 10, 2008, Plaintiff met with Yardumian and Menconi-Shipp to discuss her performance evaluation. She received a negative evaluation because she engaged in non-work related tasks during work time, such as knitting, reading her personal mail, doing Sudoku puzzles and making personal calls. The review also noted that she failed to complete assigned tasks and convey a professional image. Rodriguez Dep., Ex. 5. Yardumian and Menconi-Shipp threatened to place Plaintiff on probation.

The next day, March 11, Plaintiff placed herself on a leave of absence for "mental distress." Rodriguez Dep. at 133:14. Defendant maintains a written policy of granting non-industrial medical leave for up to six months and it requires a physician's release prior to returning from the medical leave. In September, at the expiration of the six months, Plaintiff was not able to return to work and director of human resources Julie Anderson informed her that Defendant would unilaterally extend her leave for another ninety days. In December, after this ninety-day extension, Plaintiff was still unable to return to work and she did not notify Defendant whether she intended to return to work.

On January 7, 2009, Anderson notified Plaintiff that she had been terminated as of December 10, 2008. Anderson was the sole decision-maker concerning Plaintiff's termination and nobody recommended to Anderson that Plaintiff should be terminated.

Meanwhile, in July, 2008, while on leave, Plaintiff had written a letter to Defendant summarizing incidents she perceived to be harassment over the years of her employment. The incidents

7

**United States District Court**
For the Northern District of California

included those discussed above.  Defendant conducted an investigation in response to Plaintiff's letter.  Yardumian held a staff meeting to inform employees that racial comments are unacceptable in the work environment.  She also sent staff an email reiterating Defendant's policy against harassment and encouraging staff to report any inappropriate comments.

On November 14, 2008, Plaintiff filed a charge of discrimination with the Department of Fair Employment and Housing (DFEH) and the Equal Employment Opportunity Commission (EEOC) alleging retaliation and discrimination based on sex, national origin and disability.  On January 6, 2009, she filed another charge with the DFEH and EEOC alleging retaliation and discrimination based on national origin and disability.  The 2009 charge mirrors the 2008 charge.

Plaintiff submitted evidence that, on April 14, 2010, she began psychotherapy treatment with Dr. John Italia, who diagnosed her with major depression and post-traumatic stress disorder. Rodriguez Decl., Ex. 7.

Plaintiff's operative complaint alleges the following causes of action: (1) national origin discrimination in violation of Title VII; (2) national origin harassment in violation of Title VII; (3) disability discrimination in violation of the Americans with Disabilities Act (ADA); (4) disability harassment in violation of the ADA; (5) failure to provide reasonable accommodation in violation of the ADA; (6) another charge of disability discrimination in violation of the ADA; (7) national origin and disability discrimination in violation of the California Fair

Employment and Housing Act (FEHA); (8) disability harassment in violation of FEHA; (9) retaliation in violation of FEHA; (10) failure to provide reasonable accommodation in violation of FEHA; (11) failure to prevent disability discrimination in violation of FEHA; and (12) wrongful discharge in violation of public policy.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

United States District Court
For the Northern District of California

(1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific

10

**United States District Court**
For the Northern District of California

1  evidence to show that a dispute of material fact exists.  <u>Id.</u>

2      If the moving party does not meet its initial burden of

3  production by either method, the non-moving party is under no

4  obligation to offer any evidence in support of its opposition.  <u>Id.</u>

5  This is true even though the non-moving party bears the ultimate

6  burden of persuasion at trial.  <u>Id.</u> at 1107.

7                              DISCUSSION

8  I.   Discrimination Claims

9       A.   Applicable Law

10      In <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973),

11 and <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248

12 (1981), the Supreme Court established a burden-shifting framework

13 for evaluating the sufficiency of plaintiffs' evidence in

14 employment discrimination suits.  The same burden-shifting

15 framework is used when analyzing claims under FEHA.  <u>Bradley v.</u>

16 <u>Harcourt, Brace & Co.</u>, 104 F.3d 267, 270 (9th Cir. 1996) (FEHA).

17 Within this framework, plaintiffs may establish a <u>prima facie</u> case

18 of discrimination by reference to circumstantial evidence; to do

19 so, plaintiffs must show that they are members of a protected

20 class; that they were qualified for the position they held or

21 sought; that they were subjected to an adverse employment decision;

22 and that they were replaced by someone who was not a member of the

23 protected class or that the circumstances of the decision otherwise

24 raised an inference of discrimination.  <u>St. Mary's Honor Ctr. v.</u>

25 <u>Hicks</u>, 509 U.S. 502, 506 (1993) (citing <u>McDonnell Douglas</u> and

26 <u>Burdine</u>).  Once plaintiffs establish a <u>prima facie</u> case, a

27 presumption of discriminatory intent arises.  <u>Id.</u>  To overcome this

28                                  11

United States District Court
For the Northern District of California

presumption, defendants must come forward with a legitimate, non-discriminatory reason for the employment decision.  Id. at 506-07. If defendants provide that explanation, the presumption disappears and plaintiffs must satisfy their ultimate burden of persuasion that defendants acted with discriminatory intent.  Id. at 510-11.

To survive summary judgment, plaintiffs must then introduce evidence sufficient to raise a genuine issue of material fact as to whether the reason the employer articulated is a pretext for discrimination.  Plaintiffs may rely on the same evidence used to establish a prima facie case or put forth additional evidence.  See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000); Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 (9th Cir. 1994). However, "in those cases where the prima facie case consists of no more than the minimum necessary to create a presumption of discrimination under McDonnell Douglas, plaintiff has failed to raise a triable issue of fact."  Wallis, 26 F.3d at 890.

Plaintiffs can provide evidence of "pretext (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer."  Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1194 (9th Cir. 2003) (citation and internal quotation marks omitted).  When plaintiffs present indirect evidence that the proffered explanation is a pretext for discrimination, "'that evidence must be specific and substantial to defeat the employer's motion for summary judgment.'"  EEOC v. Boeing Co., 577 F.3d 1044, 1049 (9th Cir.

12

2009) (quoting Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1095 (9th Cir. 2005)).  When plaintiffs proffer direct evidence that defendants' explanation is a pretext for discrimination, "very little evidence" is required to avoid summary judgment.  Boeing, 577 F.3d at 1049.

The Ninth Circuit has instructed that district courts must be cautious in granting summary judgment for employers on discrimination claims.  See Lam v. Univ. of Hawai'i, 40 F.3d 1551, 1564 (9th Cir. 1994).

B.   Analysis

1.   National Origin Discrimination Claims

Defendant is entitled to summary judgment on Plaintiff's national origin discrimination claims under Title VII and FEHA because Plaintiff cannot make out a prima facie case that she suffered an adverse employment action as a result of discrimination.

Defendant argues that Plaintiff has not suffered an adverse employment action as a result of any discrimination.  The Ninth Circuit defines "'adverse employment action' broadly."  Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d 840, 847 (9th Cir. 2004) (citing Ray v. Henderson, 217 F.3d 1234, 1241 (9th Cir. 2000); see also Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000) (collecting cases).  An adverse employment action is one that "materially affect[s] the compensation, terms, conditions, or privileges of . . . employment."  Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).  However, "[n]ot every employment decision amounts to an adverse employment action."  Brooks, 229

13

F.3d at 928.

Plaintiff argues that she suffered the adverse employment action of a constructive discharge on the theory that the constant harassment that she suffered forced her to discontinue working. A constructive discharge occurs when the "working conditions deteriorate, as a result of discrimination, to the point that they become 'sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.'" Brooks, 229 F.3d at 930 (quoting Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1246 (1994). A "single isolated instance of employment discrimination is insufficient as a matter of law to support a finding of constructive discharge." Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir. 1987). "A plaintiff alleging a constructive discharge must show some aggravating factors, such as a continuous pattern of discriminatory treatment." Id. (emphasis in original) (internal quotation marks and citations omitted). "The determination whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact." Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir. 1987).

Plaintiff complains that, three times a week for several years, a group of nurses would sit by her desk and gossip about sexual and racial matters. However, Plaintiff has not presented any specific examples of the comments made during these discussions, or any evidence that comments made during these

14

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

discussions were directed at herself.  Plaintiff has not shown that
Defendant discriminated against her <u>because of</u> her national
original or that she suffered any adverse employment action <u>because
of</u> her national origin.

The only specifically identified racially discriminatory
comments are insufficient to make out Plaintiff's <u>prima facie</u> case
because they were so isolated and infrequent as to amount to "stray
remarks." <u>Merrick v. Farmers Ins. Group</u>, 892 F.2d 1434, 1438 (9th
Cir. 1990).  "'[S]tray' remarks are insufficient to establish
discrimination." <u>Id.</u>  Plaintiff points to two specific remarks
allegedly made by Menconi-Shipp: in 2003, she referred to
"Mexicans" as "drug dealers" and in 2005 she called a deceased
Hispanic young man "worthless."  Although these racist comments are
offensive, they were made two years apart and several years before
Plaintiff's termination.  They were not made within the context of
Defendant's decision to terminate Plaintiff.  These comments are
insufficient to establish a constructive termination.

This is especially true in light of the fact that Plaintiff
does not dispute that she made inappropriate racial remarks
herself.  For example, she referred to a housekeeper named Harry as
"Habib Harry Balls" when he came through her department to collect
the trash.  Dicks Dep. at 35:18-36:8.  And, just like the clique of
nurses, she referred to South Asians as "guptas."  Menconi-Shipp
Dep. at 19:1-6.

At most, the evidence shows that the nurses in this clique
simply did not get along with Plaintiff.  "Because an employer
cannot force employees to socialize with one another, ostracism

15

suffered at the hands of coworkers cannot constitute an adverse employment action." Brooks, 229 F.3d at 929. Plaintiff has not presented evidence that Defendant discriminated against her because of her national origin such that no reasonable person in her shoes would continue to work there. Accordingly, Plaintiff has not established a prima facie case of national origin discrimination.

> 2. Disability Discrimination Claims

To recover for discrimination under the ADA, "an employee bears the ultimate burden of proving that he is (1) disabled under the Act, (2) a 'qualified individual with a disability,' and (3) discriminated against 'because of' the disability." Bates v. United Parcel Serv., 511 F.3d 974, 988 (9th Cir. 2007) (quoting Nunes v. Wal-Mart Stores, 164 F.3d 1243, 1246 (9th Cir. 1999)). "A 'disabled' employee under the ADA is one who: (1) has a 'physical or mental impairment that substantially limits one or more of the major life activities of such individual'; (2) has a 'record of such an impairment'; or (3) is 'regarded as having such an impairment.'" Thornton v. McClatchy Newspapers, 261 F.3d 789, 794 (9th Cir. 2001) (quoting 42 U.S.C. § 12102(2)). To determine whether an impairment substantially limits an individual, a court considers "the nature, severity, duration, and impact of the impairment." Fraser v. Goodale, 342 F.3d 1032, 1038 (9th Cir. 2003) (citing 29 C.F.R. § 1630.2(j)(2)(i)-(iii)). "Whether a person is disabled under the ADA is an 'individualized inquiry.'" Thornton, 261 F.3d at 794 (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999)).

A prima facie claim for disability discrimination under the

16

FEHA requires a plaintiff to show "(1) he suffers from a disability, (2) he is otherwise qualified to do his job, (3) he suffered an adverse employment action, and (4) the employer harbored discriminatory intent." <u>Avila v. Continental Airlines, Inc.</u>, 165 Cal. App. 4th 1237, 1246 (2008). "'An adverse employment decision cannot be made 'because of' a disability, when the disability is not known to the employer.'" <u>Id.</u> (quoting <u>Brundage v. Hahn</u>, 57 Cal. App. 4th 228, 236 (1997)).

Unlike the ADA, the FEHA does not require that a disability substantially limit a plaintiff's major life activity. <u>See</u> Cal. Gov. Code § 12926.1(c).

> [T]he Legislature has determined that the definitions of "physical disability" and "mental disability" under the law of this state require a "limitation" upon a major life activity, but do not require, as does the Americans with Disabilities Act of 1990, a "substantial limitation." This distinction is intended to result in broader coverage under the law of this state than under that federal act.

<u>Id.</u>

Plaintiff claims that Defendant discriminated against her because of her physical and mental disabilities. Plaintiff argues that she was suffering from "significant emotional distress" caused by the "hostile clique" and Defendant discriminated against her when it did not transfer her to another division. However, Defendant offered to transfer Plaintiff to another division if she presented Defendant with a letter from her physician so recommending. The letter Plaintiff gave to Defendant upon her return from leave and in support of her transfer stated that she "is released to return to her usual and customary job with <u>no</u>

17

<u>restrictions from a psychological standpoint</u>." Rodriguez Dep., Ex. 47 (emphasis added). Plaintiff submitted to the Court a different letter from her psychiatrist recommending a transfer out of the postpartum department, but that letter was not addressed to Defendant and there is no evidence that it was ever delivered to Defendant. Therefore, Plaintiff has submitted no evidence that Defendant discriminated against her based on her disability when it did not transfer her to a different department.

Plaintiff also claims that Defendant discriminated against her because of her physical disability. She asserts that she was repeatedly written up for not performing physical tasks, such as carrying patients' items or reaching for elevated files, which she was medically restricted from performing. However, Plaintiff presents no evidence that she received any such disciplinary action. Although she received a negative evaluation for not performing certain tasks requested by other nurses, none of these tasks required her to lift anything over twenty pounds or repeatedly bend over or stretch for items. See Rodriguez Dep., Ex. 5. In sum, although Plaintiff has presented evidence that she suffers from depression and anxiety, she has not presented any evidence that she was discriminated against because of a physical or mental disability. Accordingly, the Court grants Defendant's motion for summary judgment of her disability discrimination claims.

//

//

//

18

**United States District Court**
For the Northern District of California

II.   Harassment Claims

    A.   Applicable Law

        1.   National Origin Harassment

A plaintiff may prove national origin harassment by demonstrating that an employer has created a hostile or abusive work environment.  Meritor Savings Bank v. Vinson, 477 U.S. 57, 65-67 (1986).  To prevail on a hostile workplace claim, a plaintiff must show: (1) that she was subjected to verbal or physical conduct because of her national origin; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment.  Vasquez v. County of L.A., 349 F.3d 634, 642 (9th Cir. 2003).  A plaintiff must show that the work environment was abusive from both a subjective and an objective point of view.  Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995).  Whether the workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics as the plaintiff.  Id.  Although the "mere utterance of an . . . epithet which engenders offensive feelings in an employee" does not alter the employee's terms and conditions of employment sufficiently to create a hostile work environment, "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,'" such an environment exists. Meritor, 477 U.S. at 65, 67.  Neither "simple teasing," "offhand comments," nor "isolated incidents" alone constitute a hostile work environment.  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  Further, "even if a hostile working environment exists, an

19

United States District Court
For the Northern District of California

employer is only liable for failing to remedy harassment of which it knows or should know." <u>Fuller</u>, 47 F.3d at 1527.

California courts also apply federal decisions interpreting Title VII to analyze FEHA national origin harassment claims. <u>Etter v. Veriflo</u>, 67 Cal. App. 4th 457, 464 (1999).

### 2. Disability Harassment

The elements of a claim of hostile environment harassment based on disability under FEHA are the same as if analyzed as a harassment claim under Title VII: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment because of being a member of that group; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. <u>Aguilar v. Avis Rent A Car System, Inc.</u>, 21 Cal. 4th 121, 130 (1999); <u>Etter</u>, 67 Cal. App. 4th at 463. The plaintiff must show a "concerted pattern of harassment of a repeated, routine, or generalized nature." <u>Aguilar</u>, 21 Cal. 4th at 131.

The Ninth Circuit has not determined whether a plaintiff can maintain a hostile work environment claim under the ADA. <u>See</u> <u>Brown v. City of Tuscon</u>, 336 F.3d 1181, 1190 (9th Cir. 2003) (declining to decide the issue); <u>see also</u> <u>Keller-McIntyre v. S.F. State Univ.</u>, 2007 WL 776126, at *13 (N.D. Cal.). However, other circuits have addressed this issue. "To succeed on a claim of disability-based harassment, the plaintiff must prove: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of

United States District Court
For the Northern District of California

affected a term, condition, or privilege of employment; and

(5) that the employer knew or should have known of the harassment

and failed to take prompt, remedial action."  <u>Flowers v. S. Reg'l</u>

<u>Physician Servs., Inc.</u>, 247 F.3d 229, 232 (5th Cir. 2001); <u>see also</u>

<u>Keller-McIntyre</u>, 2007 WL 776126, at *13 (citing <u>Flowers</u>).

Even if harassment claims under the ADA are cognizable,
Plaintiff's claim fails.

B.   Analysis

1.   National Origin and Disability Harassment Claims

Plaintiff claims that the repeated gossiping and comments by
the clique of nurses near her desk created a hostile work
environment.  However, Plaintiff has not presented evidence that
she was subjected to abusive verbal conduct <u>because of</u> her national
origin or disability.  As discussed above, Plaintiff does not give
specific examples of discriminatory comments made during these
gossiping sessions.  Further, that the nurses gossiped near her
desk is not evidence that they subjected her to inappropriate
verbal conduct <u>because of</u> her national origin or disability.
Menconi-Shipp's two comments referring to Hispanics are offensive,
but they were not sufficient to create a hostile work environment.
They were made two years apart and several years before Plaintiff
stopped coming to work in 2008.[1]  Similarly, the derogatory names

[1]Further, the statutes of limitations bar Plaintiff's
(1) Title VII claims based on acts that occurred more than 300 days
before she filed her compliant with the EEOC and (2) FEHA claims
based on acts that occurred more than one year before she filed her
complaint with the DFEH.  42 U.S.C. § 2000e-5(e)(1); Cal. Gov't
Code § 12960(d).  These claims were filed in November, 2008.  The
continuing violation doctrine does not apply because Plaintiff has
not established that actions taken outside the statutes of

other nurses used for South Asians are not evidence of verbal harassment because of Plaintiff's national origin or disability. In sum, just as Plaintiff has not presented evidence that her co-workers' comments caused her constructive termination, she fails to show that they were sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment.

III. Reasonable Accommodation Claims

A. Applicable Law

Under the ADA, a defendant's "failure to provide reasonable accommodation to 'an otherwise qualified individual with a disability' constitutes discrimination." Kaplan v. City of Las Vegas, 323 F.3d 1226, 1232 (9th Cir. 2003) (quoting 42 U.S.C. § 12112(b)(5)(A)).  A "reasonable accommodation" includes:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

Under California law, "reasonable accommodation" is defined almost identically as under federal law.  Cal. Gov. Code

---

limitations are sufficiently linked to unlawful conduct that occurred within the limitations period.  See Yanowitz v. L'Oreal, 36 Cal. 4th 1028, 1056 (2005).

United States District Court
For the Northern District of California

§ 12926(n).[2]  The "elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability."  <u>Scotch v. Art Inst. of Cal.-Orange County, Inc.</u>, 173 Cal. App. 4th 986, 1009-10 (2009).

   B.   Analysis

   Plaintiff appears to argue that Defendant failed to accommodate her disability by failing (1) to transfer her to a different department and (2) to stop the work-place harassment.  It also appears that the disability Defendant failed to accommodate is her mental stress and anxiety.

   While Plaintiff's diagnosed depression and post-traumatic stress disorder may constitute a disability covered by FEHA and the ADA, she has not presented evidence that she is a qualified individual.

   California's proscription against disability discrimination applies only to "those employees with a disability who can perform the essential duties of the employment position with reasonable accommodation."  <u>Green v. State</u>, 42 Cal. 4th 254, 264 (2007); Cal. Gov. Code § 12940(a)(1).  "Therefore, in order to establish that a defendant employer has discriminated on the basis of disability in violation of the FEHA, the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation."  <u>Green</u>, 42 Cal. 4th at 262.

------

   [2]California law does not include the word "appropriate" before "adjustment."

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

The ADA defines a "qualified individual," in pertinent part, as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position . . . ." 42 U.S.C. § 12111(8).  The individual must also "satisf[y] the requisite skill, experience, education and other job-related requirements of the position." Bates v. United Parcel Service, Inc., 511 F.3d 974, 990 (9th Cir. 2007) (en banc).

Here, Defendant had a policy allowing medical leave for a maximum period of six months.  When Plaintiff was not able to return to work at the end of six months, Defendant extended her leave for another ninety days.  When Plaintiff was still unable to return to work after this ninety-day extension, Defendant terminated her employment.  Plaintiff's most recent doctor's note did not set any certain date for her return to work.  Therefore, Plaintiff has not shown that she was a qualified individual and her reasonable accommodation claims fail.

Even if Plaintiff were a qualified individual, Defendant was not required to transfer her to a different department as an accommodation.  As noted above, Plaintiff was given the opportunity to transfer departments, but failed to present Defendant with a physician's note recommending such a transfer.

Finally, Plaintiff cites no authority for the proposition that cessation of harassment is a required reasonable accommodation. While harassment based on a protected classification is a separate cause of action, Plaintiff has not presented sufficient evidence that it occurred, or demonstrated that it is actionable under a reasonable accommodation theory.  Hayman v. Food Lion, Inc., 893 F.

24

Supp. 1092, 1106 (S.D. Ga. 1995); <u>Cannice v. Norwest Bank Iowa</u>, 189
F.3d 723, 728 (8th Cir. 1999).  Accordingly, Plaintiff's reasonable
accommodation claims fail.

IV.  Retaliation Claims

    A.  Applicable Law

    Claims for retaliation under Title VII and FEHA are analyzed
under the <u>McDonnell-Douglas</u> framework outlined above.  <u>Lam</u>, 40 F.3d
at 1559 n.11; <u>Yanowitz v. L'Oreal USA, Inc.</u>, 36 Cal. 4th 1028, 1042
(2005).  To establish a <u>prima facie</u> case of retaliation, a
plaintiff must "show (1) he or she engaged in a 'protected
activity,' (2) the employer subjected the employee to an adverse
employment action, and (3) a causal link existed between the
protected activity and the employer's action."  <u>Yanowitz</u>, 36 Cal.
4th at 1042; <u>accord</u> <u>Miller v. Fairchild Indus., Inc.</u>, 797 F.2d 727,
731 (9th Cir. 1986).

    B.  Analysis

    Plaintiff generally states that her "harassment intensified
after [she] complained to management."  Rodriguez Decl. ¶ 8.
However, she does not support this general statement by pointing to
any specific instances of a complaint followed by harassment.  The
only cited incident concerns her complaint to Menconi-Shipp and
Yardumian during the March 5, 2008 meeting.  Although this meeting
was convened to discuss Plaintiff's alleged inappropriate comment
about a co-worker, Plaintiff used the meeting as an opportunity to
complain that the clique of nurses (1) used profane language
regularly, (2) routinely talked about sex in front of her desk and
(3) used racial slurs to describe South Asians.  On March 10, 2008,

25

**United States District Court**
For the Northern District of California

Menconi-Shipp and Yardumian met with Plaintiff to discuss her work performance.  They gave Plaintiff a negative work evaluation and threatened to place her on probation.

Plaintiff's complaint constituted protected activity because it addressed an "unlawful employment practice."  See EEOC v. Crown v. Zellerbach Corp., 720 F.2d 1008, 1013 (9th Cir. 1983); Blom v. N.G.K. Spark Plugs (USA), Inc., 3 Cal. App. 4th 382, 388 (1992).

Defendant, however, argues that neither the evaluation nor the threat of probation constituted adverse employment actions.  The Ninth Circuit has held that "only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." Brooks, 229 F.3d at 928.  Plaintiff has not cited any case to support the proposition that the threat of probation is such an action.

Although an "undeserved negative performance review can constitute an adverse employment decision," id. at 929, it does not in the present case.  Plaintiff received a negative performance evaluation on March 10, 2008, but she left work the following day and never returned.  Plaintiff provided no evidence that she suffered negative consequences as a result of this evaluation.  Thus, she has not shown that the performance evaluation "materially affect[ed] the compensation, terms, conditions, or privileges of [her] employment."  See Davis, 520 F.3d at 1089.  Further, because Plaintiff left so abruptly after her evaluation, it is not clear whether she could have appealed the evaluation or whether it was "sufficiently final to constitute an adverse employment action." Brooks, 229 F.3d at 930 ("Because the evaluation could well have

26

been changed on appeal, it was not sufficient final to constitute an adverse employment action.").

However, assuming arguendo that the negative evaluation was an adverse action, because it was issued within five days of the complaint, it would have satisfied the causation element of the prima facie case.

The burden of production would then shift to Defendant to present legitimate reasons for the negative evaluation. Defendant has satisfied this burden. Menconi-Shipp and Yardumian based their negative review of Plaintiff on her performance of non-work related activities during work time. Defendant claims that Plaintiff also received a negative review because she failed to complete assigned tasks and convey a professional image. Id.

The burden of production would then shift back to Plaintiff to demonstrate a genuine issue of material fact that the reasons advanced by Defendant were pretextual. Plaintiff has not met this burden. In fact, Plaintiff admitted to doing all of the above-mentioned non-work related activities during work hours and she was verbally warned several times prior to her performance evaluation. Rodriguez Dep. at 93:6-21; 98:23-99:17; 100:2-4. Further, she does not dispute that she failed to complete assigned tasks and convey a professional image at work. Moreover, Plaintiff has not presented evidence that similarly situated individuals made the same mistakes at work and did not receive negative performance evaluations. Although a short period of time between Plaintiff's protected activity and the adverse employment action enables her prima facie case, she has not presented any evidence that Defendant's reasons

27

for the negative evaluation are pretextual.  Plaintiff's only evidence of pretext is to reiterate her <u>prima facie</u> case, which, when based on such weak evidence, is not enough to overcome summary judgment.  <u>See</u> <u>Wallis</u>, 26 F.3d at 890.  Accordingly, Plaintiff's retaliation claims fail.[3]

CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment.  The clerk shall enter judgment for Defendant and Plaintiff shall bear Defendant's costs.

IT IS SO ORDERED.

Dated: 08/31/10

_____
CLAUDIA WILKEN
United States District Judge

---

[3]Because Plaintiff's discrimination and harassment claims fail, her claims for failure to prevent discrimination and harassment also fail.  Similarly, Plaintiff's claim against Defendant for violating California's public policy against discrimination also fails.

28